**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
**MICHAEL ADAMOWICZ and**
**ELIZABETH FRASER,**
**as Executors of the Estate of Mary**
**Adamowicz, Deceased,**

**08-CV-10255**
**(LAP)**

**Plaintiffs,**

**v.**

**INTERNAL REVENUE SERVICE**

**Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S ANSWERING MEMORANDUM AND IN FURTHER SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

**THE LAW OFFICE OF FREDERICK M. SEMBLER, PLLC**
**501 Madison Avenue**
**8th Floor**
**New York, NY 10022**
**Tel: (212) 750-4483**

Attorneys for Plaintiffs
Michael Adamowicz and
Elizabeth Fraser

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................. ii

LEGAL ARGUMENT............................................................................................1

    I.  Defendant's Answering Papers Confirm That Its Searches Were Not
        Adequate ........................................................................................................1

    II.  Defendant Has Not Met Its Burden of Proving the Applicability of Most
        of the Claimed FOIA Exemptions ..................................................................7

        A.  Defendant Has Failed to Demonstrate that the Deliberative Process
             Privilege Applies to Any of the Withheld Documents.................................7

        B.  Defendant Has Failed to Demonstrate that the Attorney-Client and
             Work Product Privileges Apply to Most of the Documents Over Which
             They Are Claimed ....................................................................................10

        C.  Defendant Has Admitted That It Is Withholding as "Third Party Return
             Information" Records To Which Plaintiffs Are Entitled..............................12

        D.  Plaintiffs Are Entitled To All Documents and Information Provided
             To Defendant By, or Sent By Defendant To, Defendant's "Confidential
             Source" ....................................................................................................16

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*Army Times Publishing Co. v. Dep't of the Air Force*, 998 F.2d 1067 (D.C. Cir. 1993)..10

*Barfield v. Dep't of Justice,* 2005 WL 551808 (D.D.C. Mar. 8, 2005)...............................2

*Brant Construction Co., Inc. v. E.P.A.*, 778 F.2d 1258 (7th Cir. 1985)...........................18

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)............9, 19

*Dep't of Air Force v. Rose*, 425 U.S. 352, 96 S. Ct. 1592 (1976)...................................19

*Ferguson v. FBI*, 957 F.2d 1059 (2nd Cir. 1992)............................................................18

*Germosen v. Cox*, 1999 WL 1021559 (S.D.N.Y. Nov. 9, 1999)....................................20

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2nd Cir. 1999)....................................3

*Halpern v. FBI*, 181 F.3d 279 (2nd Cir. 1999) ................................................................19

*Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286 (4th Cir. 2004)................................12

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984)...........................................................12

*In re Six Grand Jury Witnesses*, 979 F.2d 939 (2nd Cir. 1992).......................................12

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 110 S. Ct. 471 (1989).................19

*Jones-Edwards v. Appeal Bd. of NSA*, 196 Fed. Appx. 36 (2nd Cir. 2006).......................3

*Maricopa Audobon Society v. United States Forest Service*, 108 F.3d 1089
  (9th Cir. 1997)................................................................................................................9

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ........................................................2

*NAACP Legal Defense and Educational Fund, Inc. v. HUD*, 2007 WL 4233008
  (S.D.N.Y. Nov. 30, 2007) ............................................................................................16

*Nat'l Broadcasting Co. v. Small Business Admin'n*, 836 F. Supp. 121
  (S.D.N.Y. 1993).............................................................................................................12

*Nat'l Council of La Raza v. DOJ*, 339 F. Supp.2d 572 (S.D.N.Y. 2004)...........................9

*Nat'l Inst. of Military Justice v. DOD*, 404 F. Supp.2d 325 (D.D.C. Dec. 16, 2005)..........9

*Rugiero v. DOJ*, 257 F.3d 534 (6th Cir. 2001) ................................................................19

*Safeway v. IRS*, 2006 U.S. Dist. LEXIS 81078 (N.D. Ca. Oct. 24, 2006).........................8

*Southam News v. INS*, 674 F. Supp. 881 (D.D.C. 1987) .................................................9

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ......................................................19

*Tigue v. DOJ*, 312 F.3d 70 (2nd Cir. 2002) .....................................................................8

*United Techs. Corp. v. N.L.R.B.*, 777 F.2d 90 (2nd Cir. 1985)........................................18

*Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677 (1981) ...............................19

## TREASURY REGULATIONS

26 C.F.R. § 601.702(c)(4)(i)...........................................................................................16

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S ANSWERING MEMORANDUM AND IN FURTHER SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, Michael Adamowicz and Elizabeth Fraser ("Plaintiffs"), as

Executors of the Estate of their deceased mother, Mary Adamowicz ("Decedent"),

respectfully submit this memorandum in reply to the Memorandum of Law in Opposition

to Plaintiffs' Motion for Summary Judgment and in Further Support of the Defendant's

Motion for Summary Judgment dated September 21, 2009 ("Defendant's Answering

Memorandum") and its accompanying Declarations (collectively, "Defendant's

Answering Papers") submitted by Defendant Internal Revenue Service ("Defendant" or

"Service"), and in further support of Plaintiff's cross-motion for partial summary

judgment in this proceeding.

## LEGAL ARGUMENT

**I.    Defendant's Answering Papers Confirm That Its Searches Were Not
Adequate.**

Fully one-half of Defendant's 24-page Answering Memorandum is taken

up with a discussion, much of it repetitive of that set forth in Defendant's June 29, 2009

Memorandum, of whether Defendant's searches in response to Plaintiffs' FOIA

Requests were adequate. Defendant's Ans. Mem. at 1-12. Defendant's discussion of

this issue includes cites to cases and authorities that are called upon to reject extreme

positions that Plaintiffs have not taken, and otherwise mischaracterizes several of

Plaintiffs' arguments. *E.g.,* Defendant's Ans. Mem. at 2, 5, 9, 10. Defendant also

argues that its piecemeal releases of records over the course of the nearly four years

since the first of Plaintiffs' FOIA Requests at issue in this proceeding "demonstrate good

faith and reasonableness." Defendant's Ans. Mem. at 8-9. Noticeably absent from

Defendant's Answering Papers is any effort to directly address the facts set forth in Plaintiffs' Motion Papers that, Plaintiffs respectfully submit, confirm the unreasonable and inadequate nature of the searches conducted by Defendant.

Defendant concedes that "Defendant is obligated 'to follow through on obvious leads'" and that "[t]he competence of any records search is a matter dependant upon the circumstances of the case." Defendant's Ans. Mem at 9, 12; *Barfield v. Dep't of Justice*, 2005 WL 551808 at 5 (D.D.C. Mar. 8, 2005) (citations omitted); *see also Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986) (citations omitted). Defendant's Answering Papers, however, demonstrate that the flurry of activity in which Defendant claims to have engaged in conducting both its original and subsequent searches has repeatedly entailed pursuing every avenue but the obvious leads that would result in the discovery of responsive documents.

With respect to Plaintiffs' First FOIA Request, the papers previously submitted by Plaintiffs in support of their cross-motion ("Plaintiffs' Motion Papers") demonstrate that, almost simultaneously with his offering assurances that the documents being produced were all the documents that could be located, the Service Officer ostensibly responsible for conducting the search not only separately acknowledged the Service's possession of a number of other responsive documents that were not produced but was actively working on Defendant's behalf to conceal these and other responsive documents from Plaintiffs. Sembler's Aug. 31, 2009 Decl. ¶¶ 33-43; Plaintiffs' Memorandum of Law in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment

- 2 -

dated August 31, 2009 ("Plaintiffs' August 31, 2009 Memorandum") at 9-10.[1]  Defendant

does not dispute, or offer any explanation for, any of these facts, which are therefore

undisputed.  *See Jones-Edwards v. Appeal Bd. of NSA*, 196 Fed. Appx. 36, 37 (2nd Cir.

2006) (quoting *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)); *Grand Cent.

P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2nd Cir. 1999).

Instead, Defendant claims that "once [Rachel] Gregory read Plaintiffs'

[August 31, 2009 Memorandum] . . . Gregory re-reviewed Glasel's litigation files" and

"discovered" additional responsive documents.  Defendant's Ans. Mem. at 8; Second

Declaration of Rachel Gregory dated September 21, 2009 ("Gregory's September 21,

2009 Second Declaration") ¶¶ 4-5.  To the extent that Defendant's Answering Papers

are intended to create the impression that the responsive documents referred to above

and described in Plaintiffs' Motion Papers as having been withheld by Defendant are

included in the additional documents Defendant has produced since the submission of

Plaintiffs' Motion Papers, the suggestion is false.  Second Declaration of Plaintiffs'

Counsel In Support of Plaintiffs' Cross-Motion for Partial Summary Judgment dated

October 13, 2009 ("Sembler's October 13, 2009 Second Declaration") ¶¶ 32-36, being

submitted herewith.  Further, Defendant's Motion Papers confirm that Defendant failed

"to follow through on [the] obvious leads" that Defendant acknowledges it was obligated

to pursue.  Taking Defendant's account at face value, after being confronted with the

facts set forth in Plaintiffs' Motion Papers, Defendant's Officers avoided pursuing the

one line of inquiry that most obviously had the greatest chance of leading to the

production of responsive documents, namely, contacting Glasel, the attorneys he

---

[1] Except where otherwise indicated, defined terms as used herein have the same
meaning as in Plaintiffs' Motion Papers.

worked with in the Tax Court proceeding, or any of the other Service Officers who were parties to the documents in question, to ask them where the documents in question were located.

Similarly, as pointed out in Plaintiffs' Motion Papers, despite the fact that certain of the documents produced in response to Plaintiffs' First FOIA Request on their face strongly suggest that material has been deleted from them, Defendant has refrained from making any inquiry concerning this issue of either Glasel, who Defendant claims supervised the search, or the one person who more likely than any other would have personal knowledge concerning this topic, Weitzman himself. Plaintiffs' Aug. 31, 2009 Mem. at 7-8. Defendant's Answering Papers confirm that Defendant continues to avoid pursuing this "obvious lead." Defendant's Ans. Mem. at 8-10, n.4. Defendant also responds to Plaintiffs' showing that the documents produced themselves confirm the existence of other responsive documents (and, again, the identities of the Service Officers who likely have them) by essentially arguing that Defendant need not respond to this demonstration that its initial search was unreasonable because its initial search was reasonable. Defendant's Mem. at 9-10.

Similar conclusions apply with respect to Defendant's claims that 10 pages of documents undisputedly responsive to Plaintiffs' Third FOIA Request are now "missing." Defendant still does not claim to have made any effort to locate these documents, but merely describes in detail the process by which Defendant originally determined that the pages were missing. Gregory's Sept. 21, 2009 Sec. Decl. ¶ 3; Plaintiffs' Aug. 31, 2009 Mem. at 11; Gregory's June 25, 2009 Decl. ¶ 28. Plaintiffs respectfully call to the Court's attention that Defendant now has also submitted the September 15, 2009 Declaration of Susan Leboff ("Leboff's September 15, 2009

- 4 -

Declaration"), in which Leboff explicitly claims that "at the times of the second and third FOIA requests at issue . . . [she] had possession of and access to all documents gathered and created" during the examination of the Estate's From 706, which continued for more than two years after the date of Plaintiffs' Third FOIA Request. Leboff's Sept. 15, 2009 Decl. ¶ 4; Gregory's June 25, 2009 Decl. ¶ 25. Plaintiffs submit that it is evident from these circumstances that what was forwarded to Defendant's Disclosure and Appeals Offices in connection with Plaintiffs' FOIA Requests were copies of the documents that were reviewed, and that the originals, or at least other copies, of all of these documents remained with the Service personnel who had possession of them. Plaintiffs submit that the "obvious" step for Defendant to have taken when it learned that documents were missing was to simply contact Leboff and ask for additional copies. Defendant's Answering Papers, however, reinforce the fact that Defendant did not take even this minimal step in order to meet its obligations under FOIA with respect to the documents in question.

As to the supposed "reasonableness" of the searches conducted in response to Plaintiffs' Second and Third FOIA Requests, as with much of the rest of Defendant's Answering Papers, Leboff's September 15, 2009 Declaration is most noteworthy for what it omits. Even on the assumption that its assertions are true, the Declaration establishes no more than that Leboff searched her own files and computer for responsive documents. Leboff's Sept. 15, 2009 Decl. ¶¶ 4-5. As pointed out in Plaintiffs Motion Papers, one of the fundamental flaws with Defendant's searches is that no effort was made to determine whether any of the numerous other Service Officers involved in the examination of the Estate's Form 706 were in possession of any responsive records beyond those in Leboff's possession. Plaintiffs' Aug. 31, 2009 Mem.

at 8; Sembler's Aug. 31, 2009 Decl. ¶ 111.

Evidently in an attempt to explain this circumstance, Leboff claims that she "had possession of and access to all documents gathered and created in the course of conducting the Examination." Leboff's Sept. 15, 2009 Decl. ¶ 4. Plaintiffs submit that there are at least two obvious difficulties raised by this statement and by the unilateral nature of the searches Leboff claims to have conducted. First, Plaintiffs submit that it is self-evident that Leboff could not possibly "know" that she alone had "all documents gathered and created in the course of conducting the examination" without first ascertaining from the other Service Officers involved that they did not maintain their own files pertaining to the examination of the Estate's Form 706. Second, Plaintiffs respectfully submit that acceptance of this statement as correct requires adoption of the conclusion that *none* of the numerous Service Officers undisputedly involved in the examination of the Estate's Form 706 maintained notes, activity logs, drafts of documents, internal memos, correspondence, copies of documents on which they marked their own comments or any other documents of any kind pertaining to the examination. Plaintiffs respectfully submit not only that such a conclusion defies credulity, but that even if it were otherwise deemed possible, Defendant's acknowledgment that it made no effort to ascertain the existence or location of such additional documents before making such claims further confirms that Defendant cannot meet its burden of proof with respect to demonstrating the adequacy and reasonableness of its searches.

- 6 -

## II.   Defendant Has Not Met Its Burden of Proving the Applicability of Most of the Claimed FOIA Exemptions.

### A.   Defendant Has Failed to Demonstrate that the Deliberative Process Privilege Applies to Any of the Withheld Documents.

Central to Plaintiffs' claim that Defendant has failed to meet it's burden of demonstrating that the deliberative process privilege applies to any of the documents Defendant has withheld on this claimed basis are that Defendant both has failed to identify how any of the documents withheld are related to the formulation of Defendant's "policies," and also has sought to expand the deliberative process privilege to effectively cover virtually every document that might be requested of Defendant under FOIA. Plaintiffs' Aug. 31, 2009 Mem. at 12-17; Gregory's June 25, 2009 Decl. ¶¶ 25-29; Defendant's June 29, 2009 Mem. at 17-20.  Far from attempting to allay such concerns by, for example, identifying the policies claimed to be at issue, Defendant's Answering Papers only repeat and amplify the legally erroneous standards that Defendant is utilizing.  Defendant's Ans. Mem. at 15-19.

By way of example, Defendant continues to assert that the documents in question are "predecisional" because each document "precedes temporally the decision in issue, and directly relates to that decision," Defendant's Ans. Mem. at 17, without ever identifying how any of these "decisions" were intended to create or develop any "policy."  The spreadsheets annexed to Gregory's September 21, 2009 Second Declaration also fail either to delineate any "policy" that was being formulated by Defendant and in aid of which formulation these communications were created, or to confirm that the documents were not created as part of the implementation of policies already established by Defendant, as would normally be expected for the vast majority of decisions made in the course of a civil tax audit, and as actually appears to be the

case from the descriptions Defendant now offers.  Gregory's Sept. 21, 2009 Sec. Decl.

Exs. A1, B1; *Safeway v. IRS*, 2006 U.S. Dist. LEXIS 81078 at 26 (N.D. Ca. Oct. 24,

2006).  Defendant's attempt to cast Plaintiffs' highlighting of such flaws as "speculation,"

Defendant's Ans. Mem. at 17, misplaces the burden of proof in this matter.  It is

Defendant who must prove that each of the withheld documents relates to the

formulation of policy by Defendant, not Plaintiffs who must prove to the contrary.

In a further effort to rebut the rule, upheld by this Court in Plaintiffs' 2006

FOIA Action, that a government agency must identify the specific agency decision in

connection with which the document is claimed to have been prepared, Defendant

again misdescribes relevant legal precedent.  Defendant's Ans. Mem. at 16-17; *Tigue v.*

*DOJ*, 312 F.3d 70, 80 (2nd Cir. 2002) (Sotomayor, J.) (pointing out that the agency need

not demonstrate that the decision in question actually was made, but "must be able to

demonstrate that, *ex ante*, the document for which the executive privilege is claimed

related to a specific decision facing the agency") (citing *NLRB v. Sears, Roebuck & Co.*,

421 U.S. 132, 151 n. 18), *cert. denied*, 538 U.S. 1056 (2003).  Plaintiffs respectfully

submit that *Tigue v. DOJ* actually highlights the inapplicability of the deliberative

process exemption in the instant matter.  In that case, the document that was withheld

was shown to have been specifically created "for use . . . in advising the IRS on its

future policy with respect to the" Criminal Investigations Department.  *Tigue v. DOJ*, 312

F.3d at 73, 80.  Nothing even approaching a showing of this kind has been made with

respect to any of the withheld documents in the instant case.

In addition, Defendant implicitly argues in Defendant's Answering Papers

that all documents containing discussions of legal matters are automatically

"deliberative" within the meaning of the deliberative process exemption and therefore

- 8 -

covered by this exemption.  Defendant's Ans. Mem. at 17-18.  Although the two
exemptions may overlap in an appropriate case, the legal issue in question must entail
legal advice in connection with the formulation by a government agency of its policies.
*See Maricopa Audobon Society v. United States Forest Service*, 108 F.3d 1089, 1094
(9th Cir. 1997); *Nat'l Council of La Raza v. DOJ*, 339 F. Supp.2d 572, 580-81 (S.D.N.Y.
2004); *Nat'l Inst. of Military Justice v. DOD*, 404 F. Supp.2d 325, 346-47 (D.D.C. Dec.
16, 2005); *Southam News v. INS*, 674 S. Supp. 881, 886 (D.D.C. 1987).  Defendant's
suggestion that agency documents discussing legal issues, regardless of the context or
content, are automatically subject to the deliberative process exemption is in conflict
with applicable law.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854,
867-68 (D.C. Cir. 1980) ("an agency will not be permitted to develop a body of 'secret
law,' . . . hidden behind a veil of privilege").

Moreover, as Plaintiffs previously have pointed out, Defendant admits that
it is attempting to shield from disclosure a number of documents that contain Leboff's
notes to herself and that were not shared with any other Service Officer, premising this
effort on the notion that Leboff was the "decisionmaker" with respect to the outcome of
the examination of the Estate's Form 706.  Plaintiffs' Aug. 31, 2009 Mem. at 16, n.1;
Defendant's June 29, 2009 Mem. at 18-19; Gregory's June 25, 2009 Decl. ¶ 25;
Defendant's Ans. Mem. at 19.  These documents apparently include the ten "missing"
documents that are discussed above.  The record, however, demonstrates that the
ultimate decisions on the examination were made by Leboff's supervisor and by other
personnel within the Service, Sembler's Oct. 13, 2009 Sec. Decl. ¶¶ 17-25.  Further,
IRS auditors do not set agency policy.  Since Defendant does not claim that these
documents were created to assist any other Service Officers in making the decisions

involved in the examination of the Estate's Form 706, Defendant has again failed to demonstrate that the documents qualify for the deliberative process exemption.[2]

**B.  Defendant Has Failed to Demonstrate that the Attorney-Client and Work Product Privileges Apply to Most of the Documents Over Which They Are Claimed.**

In addition to repeating earlier arguments, Defendant relies upon Gregory's September 21, 2009 Second Declaration and, to some extent, upon Leboff's September 15, 2009 Declaration, as well as on an erroneous legal analysis, to continue to argue that the attorney-client or work product privileges apply to a number of the documents that Defendant has withheld. Defendant's Ans. Mem. at 12-15. Defendant also bafflingly claims that Plaintiffs do not "challenge . . . Defendant's invocation of the work-product privilege" and have waived any objection to Defendant's assertion of the work product exemption, Defendant's Ans. Mem. at 12, n.7, 24, despite the fact that Plaintiffs' August 31, 2009 Memorandum clearly and explicitly discusses both the attorney-client and work product privileges together. See Plaintiffs' Aug. 31, 2009 Mem. at 17-21 and authorities cited.

Plaintiffs respectfully submit that a review of the new spreadsheets included with Gregory's September 21, 2009 Second Declaration confirms that, with respect to the vast majority of the documents listed -- which do not include all of the documents over which these privileges are asserted, see Defendant's Ans. Mem. at 13, n.8 -- the descriptions offered add little to the presentation contained in Defendant's

---

[2] It also appears that these documents consist primarily of factual information, which is not subject to the deliberative process exemption, and are part of a set of documents that Defendant otherwise released, meaning that Defendant's blanket assertion of privilege is inadequate to meet Defendant's burden. Gregory's Sept. 21, 2009 Sec. Decl. ¶ 3; Plaintiffs' Aug. 31, 2009 Mem. at 13 and authorities cited; see Army Times Publishing Co. v. Dep't of the Air Force, 998 F.2d 1067, 1068, 1070-72 (D.C. Cir. 1993).

Motion Papers that would support the claim that either of these privileges apply.  The majority of documents mentioned are vaguely described as "Communication[s] regarding how to proceed with" some broadly described matter, for example the "exam," "summons litigation," and other such designations, or, in a few cases as "Advice," which descriptions, as with Defendant's previous submissions, fail to confirm that the communications actually entailed the seeking or providing of legal advice.  Gregory's Sept. 21, 2009 Sec. Decl. Exs. A1, B1; see Plaintiffs' Aug. 31, 2009 Mem. at 19-20 and authorities cited.  Further, based upon these descriptions, Defendant is attempting to assert the attorney-client privilege over documents that are not attorney-client communications at all, but instead are said to reflect Leboff's own internal "deliberation." Gregory's Sept. 21, 2009 Sec. Decl. Ex. B1 at 3, 417-419.

Defendant also responds to Plaintiffs' observation that Defendant itself states that one of the documents over which Defendant is attempting to assert the attorney-client privilege "contains no discussion of law whatsoever" by referring to the notion that they attorney-client privilege covers communications from the client to the attorney for the purpose of receiving legal advice.  Plaintiffs' Aug. 31, 2009 Mem. at 20; Gregory's June 25, 2009 Decl. ¶ 36; Defendant's Answering Mem. at 14-15, n.9. Plaintiffs do not dispute this rather basic point, but note that, according to Defendant's listing of the documents, this description pertains to an entire exchange of emails among various attorneys and individuals, not merely to a communication from Leboff or some other Service Officer to an attorney.

Had Defendant actually intended by its use in Defendant's Motion Papers of the broad term "professional advice" to include only and specifically legal advice, it would have been both a simple matter and proper for Defendant to include in its

- 11 -

Answering Papers appropriate declarations that so stated. Defendant, however, has failed to take this basic step, or to offer any other presentation that would confirm this point. Instead, Defendant ascribes to Glasel's June 25, 2009 Declaration a specificity it does not possess, and advances a somewhat unclear argument that appears intended to suggest that all "professional advice," regardless of its content or context, is subject to the attorney-client privilege, relying upon cases where the term "professional advice" was clearly utilized to refer only to legal advice and/or legal opinions by a lawyer to his client. Defendant's Ans. Mem. at 14-15; Glasel's June 25, 2009 Decl. ¶¶ 1, 3, 8, 10; *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943-44 (2nd Cir. 1992); *In re Sealed Case*, 737 F.2d 94, 102 (D.C. Cir. 1984); *Nat'l Broadcasting Co. v. Small Business Admin'n*, 836 F. Supp. 121, 124-25 (S.D.N.Y. 1993).

Plaintiffs respectfully submit that a presentation which requires speculation and conjecture in order to support the conclusion that the FOIA exemptions for the attorney-client or work product privileges apply is plainly inadequate to meet Defendant's burden of proof on this issue, and that this Court should now direct Defendant to produce to Plaintiffs the documents in question, other than those few referred to in Plaintiffs' Motion Papers for which it appears the work product exemption may apply.

### C.    Defendant Has Admitted That It Is Withholding as "Third Party Return Information" Records To Which Plaintiffs Are Entitled.

Plaintiffs' Motion Papers both (i) identified documents over which Defendant was asserting the privacy and third party return information exemptions and that pertain to Plaintiffs themselves or to entities in which Decedent or Plaintiffs have

had a "material interest" as that phrase is used in Section 6103 of the IRC, and (ii) argued that Defendant was asserting these exemptions over a number of other documents that fell into these same categories. Plaintiffs' Aug. 31, 2009 Mem. at 27-29; Adamowicz's Aug. 31, 2009 Decl. ¶¶ 13-15. In response, Defendant admits that this is the case, and does not dispute any of the facts set forth in Plaintiffs' Motion Papers concerning Plaintiffs' entitlement to these documents. Defendant's Ans. Mem. at 12-13, 22-23; Supplemental Declaration of Tara M. La Morte dated September 21, 2009 ("La Morte's September 21, 2009 Supplemental Declaration") ¶ 5, Ex. C. Yet, Defendant continues to refuse to produce these documents to Plaintiffs, now arguing for the first time that Plaintiffs are obligated to fill out additional forms and make further requests to Defendant setting forth the same information that Defendant already possesses before it will release these documents to Plaintiffs. Defendant's Ans. Mem. at 21; La Morte's September 21, 2009 Supp. Decl. ¶ 5, Ex. C.

Defendant appears to have abandoned its previous claims that these documents qualify for the privacy exemption under FOIA Section 552(b)(7)(C). Plaintiffs therefore are entitled to summary judgment on the issue of whether the documents in question may be withheld based on that exemption.

As to the "third party return information" claim, Plaintiffs respectfully submit that Defendant's Answering Papers confirm that summary judgment should be granted to Plaintiffs on this issue as well, and Defendant consequently directed to turn the documents in question over to Plaintiffs. Defendant's assertions that "Plaintiffs are required to submit information in compliance with" various Treasury Regulations, including "regulations promulgated pursuant to 26 U.S.C. § 6103, to show that the Estate is entitled to receive the business information sought," and that Defendant has

no obligation to review undisputedly responsive records to determine "whether the requisite interest or showing needed for disclosure is present," Defendant's Ans. Mem. at 20-21, underscore Defendant's serious misunderstanding of its obligations under FOIA. Plaintiffs' Requests were made under FOIA, not under section 6103 of the IRC, a statute that only is relevant for the purpose of determining whether an exemption to FOIA applies. The documents in question do not need to be reviewed by Defendant to determine whether a "showing needed for disclosure is present," an outcome that is presumed under FOIA, but to confirm that the exemptions that Defendant has asserted over the documents actually apply. As described in Plaintiffs' Motion Papers, documents in Defendant's possession concerning both Plaintiffs and entities in which Plaintiffs and/or Decedent have held interests that Defendant received from Plaintiffs at Leboff's request and that Defendant otherwise claims to have thoroughly reviewed in the course of responding to Plaintiffs' FOIA Requests themselves confirm Plaintiffs' entitlement to the requested documents under Section 6103 of the IRC. Sembler's Aug. 31, 2009 Decl. ¶¶ 46-103, Ex V; Adamowicz Aug. 31, 2009 Decl. ¶¶ 5-10, 15-18; Plaintiffs' Aug. 31, 2009 Mem. at 27-28; see also Second Declaration of Plaintiff Michael Adamowicz in Support of Cross-Motion for Partial Summary Judgment dated October 13, 2009 ("Adamowicz's October 13, 2009 Second Declaration") ¶¶ 5-8, being submitted herewith. Further, Leboff professes familiarity in Leboff's September 15, 2009 Declaration with all of the documents created or received by the Service during the examination of the Estate's Form 706. Leboff's Sept. 15, 2009 Decl. ¶ 4.

Plaintiffs respectfully submit that the foregoing circumstances confirm that any additional "burden" imposed on Defendant in order to meet its FOIA obligations in this case would be minimal, and also note that Defendant cites no authority for its

- 14 -

contrary proposition.  Further, Plaintiffs' cross-motion itself is sufficient to erase any doubt concerning Defendant's authority to release to Plaintiffs documents concerning Plaintiffs.

Defendant's approach also effectively shifts to Plaintiffs the task of undertaking a review of their own records and attempting to divine the identities of the entities and individuals to which the withheld documents apply, leaving Defendant, under its proposed methodology, free to continue to withhold documents pertaining to other entities that Plaintiffs might not specifically name or realize are among the records being withheld despite Plaintiffs' clear entitlement to receive them.  See Adamowicz's Oct. 13, 2009 Sec. Decl. ¶¶ 5-7 (discussing entities other than those specifically named in Adamowicz's August 31, 2009 Declaration in which Plaintiffs and/or their parents have or had a "material interest" within the meaning of Section 6103 of the Code). Indeed, were Defendant's posture with respect to its continued refusal to turn the documents at issue over to Plaintiffs correct, it would appear that the Service violated the IRC repeatedly throughout the examination by disclosing to Plaintiffs information that it had acquired about Plaintiffs and these entities.  See, e.g., Adamowicz's Oct. 13, 2009 Decl. ¶¶ 5-6, 8-9.

In their Complaint, Plaintiffs affirmatively alleged they had exhausted their administrative remedies prior to bringing this action.  Compl. ¶ 37.  Although Defendant's Answer asserted that this allegation "contains conclusions of law as to which no response is required," Ans. ¶ 37, Plaintiffs respectfully submit that this response should be properly treated as an admission of this allegation, a conclusion reinforced by the fact that, in conflict with Defendant's own regulations, at no time previously, either during the processing of Plaintiffs' FOIA Requests or during this

- 15 -

litigation, did Defendant even raise this issue. *See* Treas. Reg. § 601.702(c)(4)(i)

("[r]equester shall be notified promptly in writing of . . . any additional requirements to be

met").

Plaintiffs respectfully submit that Defendant's last-ditch efforts to throw

remaining "roadblocks" in Plaintiffs' path with respect to documents that Plaintiffs

undisputedly are entitled to receive should be rejected, and that Plaintiffs' cross-motion

for summary judgment should be granted with respect to these documents and

Defendant directed to produce them to Plaintiffs. *See NAACP Legal Defense and*

*Educational Fund, Inc. v. HUD*, 2007 WL 4233008 at 7 (S.D.N.Y. Nov. 30, 2007)

(agency's position that requester needed to pursue additional administrative remedies

"would inhibit the very purpose of FOIA itself, by imposing additional, unnecessary

roadblocks in the path towards government accountability") (citation omitted).

**D.    Plaintiffs Are Entitled To All Documents and Information Provided To Defendant By, or Sent By Defendant To, Defendant's "Confidential Source."**

Plaintiffs demonstrated in Plaintiffs' Motion Papers that Defendant had

already disclosed to Plaintiffs that the supposed "confidential source" with respect to

which Defendant has invoked the exemption under FOIA § 552 (b)(7)(D) is Paul Aniboli,

an attorney who formerly represented Plaintiffs, Decedent's Estate, and entities in which

Plaintiffs and Decedent were or are interested.  In addition, the documents produced by

Defendant provided separate confirmation that Aniboli is the "confidential source."

Plaintiffs' Aug. 31, 2009 Mem. at 22-23; Sembler's Aug. 31, 2009 Decl. ¶¶ 92-94, Exs.

A, B; Adamowicz's Aug. 31, 2009 Decl. ¶¶ 11-14.

Defendant now claims for the first time that a previously-released

document that mentions Anibol's name three times in a portion subsequently withheld

on the basis of the confidential source exemption was "erroneously redacted." Leboff's
Sept. 15, 2009 Decl. ¶ 8; Defendant's Ans. Mem. at 21. Defendant, however, makes no
mention of the fact that "5 USC 552(b)(7)(D)" was expressly inserted next to this
redaction in the subsequently-produced copy of the document, a circumstance that is
not explained simply by claiming the redaction was "erroneous." Sembler's Aug. 31,
2009 Decl. Exs. A, B. Further, while repeatedly attacking Plaintiffs' description of the
information contained in Defendant's own documents as "speculation," Defendant's
Ans. Mem. at 21-22, Defendant, once again, does not take the one step that
presumably could have disposed of this issue, namely, including a statement in Leboff's
September 15, 2009 Declaration that Aniboli is not the confidential source.

         In any case, Defendant's affirmative confirmation in Leboff's September
15, 2009 Declaration that only one "confidential source" was involved in the entire
examination of the Estate's Form 706, Leboff's Sept. 15, 2009 Decl. ¶ 7, further
demonstrates that the source is Aniboli. In response to Plaintiffs' FOIA Requests at
issue in this proceeding, Defendant has produced copies of a document that had been
previously produced to Plaintiffs in response to their FOIA Request at issue in Plaintiffs'
2006 FOIA Action. Sembler's Oct. 13, 2009 Sec. Decl. ¶¶ 8, 13, Exs. A, B. While
Defendant redacted portions of this document when Defendant originally produced it to
Plaintiffs, expressly citing the confidential source exemption, Defendant has produced
several unredacted versions of this document to Plaintiffs in response to Plaintiffs' Third
FOIA Request at issue in this proceeding that confirm that the portions previously
redacted were, once again, references to Paul Aniboli. Sembler's Oct. 13, 2009 Sec.
Decl. ¶¶ 8-9, 13-15, Exs. A, B. The redacted versions of this document were the focus
of considerable attention in Plaintiffs' 2006 FOIA Action, which would seem to preclude

- 17 -

Defendant from now attempting to assert that these redactions also were "erroneous." Sembler's Oct. 13, 2009 Sec. Decl. ¶¶ 10-12.

Plaintiffs respectfully submit that the foregoing only further confirms that there can be no reasonable doubt that the "confidential source" in fact is Paul Aniboli, Plaintiffs' former attorney. Since the exemption under FOIA § 552(b)(7)(D) applies in the civil context only when disclosure of the information "could reasonably be expected to disclose the identity of a confidential source," -- the only ground upon which Defendant has claimed the exemption, Gregory's June 25, 2009 Decl. ¶¶ 53-57 -- there is consequently no longer any basis for Defendant to withhold this information from Plaintiffs. See Plaintiff's Aug. 31, 2009 Mem. at 22-23.

Moreover, the cases cited by Defendant in which the disclosure of the confidential source's identity was held not to warrant releasing information provided by the source to the FOIA requestor did not involve, as here, Defendant's having disclosed the identity of the source directly to the FOIA requester (as opposed to having done so in a separate matter or to a third party), and also did not involve a source who had been the FOIA requestor's attorney. Defendant's Ans. Mem. at 22; *Ferguson v. FBI*, 957 F.2d 1059, 1065-68 (2nd Cir. 1992) (distinguishing "information provided by sources in the context of a criminal investigation" from a civil matter and holding that, in former, release of some information does not waive exemption); *Brant Construction Co., Inc. v. E.P.A.*, 778 F.2d 1258, 1265 and n.8 (7th Cir. 1985) (subsequent disclosure of information provided does not cause loss of confidentiality of source); *United Techs. Corp. v. N.L.R.B.*, 777 F.2d 90, 95-96 (2nd Cir. 1985) (disclosure of source's identity to counsel for third party).

- 18 -

As to Defendant's effort to justify invocation of this exemption even if it is conceded that the confidential source is Aniboli, what Defendant attempts to cast as a "tangential" issue, Defendant's Ans. Mem. at 22, n.11, in fact goes right to the heart of why FOIA was enacted in the first place. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52, 110 S. Ct. 471, 475 (1989) (internal citations omitted); *see Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S. Ct. 1592, 1604 (1976); *Rugiero v. DOJ*, 257 F.3d 534, 546 (6th Cir. 2001) (internal citations omitted); *Halpern v. FBI*, 181 F.3d 279, 284-285 (2nd Cir. 1999). The blatant misconduct engaged in by both the Service and Aniboli with respect to this issue is discussed in Plaintiffs' Motion Papers, and, Plaintiffs submit, is in any case self-evident. Plaintiffs' Aug. 31, 2009 Mem. at 24-25. The attorney-client privilege is among the oldest recognized by the common-law, and predates by several centuries the confidential source exemption contained in FOIA. As the Court is certainly well aware, among the privilege's chief objectives is to foster open and frank communications between the attorney and client, and to allow the client the assurance of knowing that his or her communications with the attorney will not be disclosed. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981); *see Tax Analysts v. IRS*, 117 F.3d 607, 618-19 (D.C. Cir. 1997) (*citing In re Sealed Case*, 237 U.S. App. D.C. 312, 737 F.2d 94, 98-99 (D.C. Cir. 1984)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 863. The obligations of an attorney to keep all information pertaining to its client confidential extends to all information acquired by the attorney during the representation pertaining to the client, not merely to information over which the attorney-client privilege may apply in a litigation context. Plaintiffs' Aug. 31, 2009 Mem. at 18-19 and authorities cited. Plaintiffs respectfully submit that, under these circumstances, any promise of confidentiality that was made by Leboff – herself

- 19 -

an attorney – to Aniboli was a nullity.  An attorney breaching so fundamental and basic

a privilege, and so totally subverting the very essence of the attorney-client relationship

and the attorney's fiduciary obligations to his client, can have no reasonable expectation

that a promise of "confidentiality" under these circumstances will be or should be

respected.  Thus, even accepting Defendant's argument that it is "the circumstances of

the communication with the confidential source" that should be the focus of any analysis

of the exemption, Defendant's Ans. Mem. at 22, n.11; *Germosen v. Cox*, 1999 WL

1021559 at 17 (S.D.N.Y. Nov. 9, 1999), in this instance those circumstances confirm

that no promise of confidentiality could have been legitimately made.

Plaintiffs respectfully submit that they have demonstrated that the

"confidential source" is Aniboli, that Defendant has disclosed this to Plaintiffs, and that

Plaintiffs are entitled to all of the documents and information over which Defendant has

asserted the confidential source exemption in this matter.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' cross-motion for partial

summary judgment should be granted, and, except to the limited extent discussed

above, Defendant's motion for summary judgment should be denied.

Dated:      New York, New York                      Respectfully submitted,
            October 13, 2009

                                          The Law Office of
                                            Frederick M. Sembler, PLLC
                                          501 Madison Avenue, 8th Floor
                                          New York, NY  10022
                                          (212) 750-4483

                                          Attorneys for Plaintiffs

Of Counsel:                               By: s/ Frederick M. Sembler

Frederick M. Sembler  FS 6913                 Frederick M. Sembler FS 6913
Carol A. Crossett  CAC 2022

- 20 -