USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL ADAMOWICZ and ELIZABETH     :
FRASER, as executor of the Estate   :
of Mary Adamowicz, Deceased,        :
                                    :          08 Civ. 10255
            Plaintiffs,             :
                                    :   MEMORANDUM AND ORDER
      -against-                     :
                                    :
Internal Revenue Service,           :
                                    :
            Defendant.              :
----------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

Acting as executors of the Estate of their mother Mary Adamowicz (the "Estate"), Plaintiffs Michael Adamowicz and Elizabeth Fraser ("Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), to compel the production of documents withheld by Defendant the Internal Revenue Service (the "IRS" or the "Government"). Both parties now move for summary judgment. For the reasons set forth below, the Government's motion [dkt. no. 25] is GRANTED, and Plaintiffs' motion [dkt. no. 34] is DENIED.

I.   BACKGROUND

Plaintiffs had previously filed a FOIA request on March 10,
2005 (the "previous FOIA request") that was the subject of the
litigation in docket no. 06 Civ. 3919.  See generally Adamowicz
v. I.R.S., 552 F. Supp. 2d 355 (S.D.N.Y. 2008) (hereinafter
"Adamowicz I").  This action—the second episode in what is
essentially the same dispute—involves three more FOIA requests
by Plaintiffs seeking documents relating to both the IRS's
examination of the Estate and the ensuing legal battles between
the parties.  (See Sembler Decl.)

A.   Plaintiffs' December 6, 2005 FOIA Request

On December 6, 2005, Plaintiffs' counsel, on behalf of
Plaintiffs, filed a FOIA request seeking: "All records
pertaining to the Protest to the Appeals Office filed by the
Executors of the Estate of Mary Adamowicz in August 2004."
(Dichter Decl. Ex. A at 1.)  That request was received in the
IRS's Manhattan Disclosure Office on January 5, 2006 and
assigned to Senior Disclosure Specialist Alan Dichter for
processing.  (Id. ¶ 8.)  Based on his involvement with
Plaintiffs' previous FOIA request and his records therefrom,
Dichter contacted Small Business/Self Employed ("SB/SE") Chief
Counsel Attorney Donald Glasel and Appeals Officer Israel
Weitzman, who were involved with Plaintiffs' appeal of the

2

previous FOIA request.  (Id. ¶¶ 9-13.)  Glasel and Weitzman collected 40 responsive documents.  (Id. ¶¶ 17, 20.)  Around March 24, Dichter and Glasel reviewed those documents.  (Id. ¶ 18.)  On March 27, the Disclosure Office produced all 40 pages in their entirety to Plaintiffs' counsel.  (Id. ¶¶ 19-20; see Carrillo Decl. Ex. A.)  Dichter knew of no other office that would have responsive documents.  (Dichter Decl. ¶ 12.)  Docket Attorney Rachel Gregory also conducted her own search for additional documents and found nothing.  (Gregory 2d Decl. ¶ 4.)

On April 28, Plaintiffs appealed the March 27 document production.  (See Carrillo Decl. Ex. C.)  Plaintiffs requested information regarding whether the Government's search method was adequate and whether the Government had redacted any of the documents.  (Id. at 1.)  On September 11, the Government denied Plaintiffs' appeal and advised them of their legal remedies. (Id.)

## B.   Plaintiffs' December 16, 2005 FOIA Request

On December 16, 2005—ten days after Plaintiffs' first FOIA request and well before the IRS had responded to it—Plaintiffs' counsel filed on Plaintiffs' behalf a second FOIA request with the IRS.  (Dichter Decl. Ex. C at 1.)  The request sought:

> All records created or modified, whether by or on behalf of the Internal Revenue Service or by any other person or entity, or received by the Internal Revenue

3

Service, in the period from March 10, 2005 to the
present and pertaining to the examination of the Form
706 filed in 2003 for the above-mentioned Estate,
excluding (i) copies of the Form 706 itself, but only
to the extent such copies are identical to the Form
706 as filed, and (ii) copies of correspondence and
documents submitted by me to the Internal Revenue
Service in connection with the examination of the
Estate's Form 706, but only to the extent such copies
are identical to the correspondence and documents as
submitted to the Service.

(Id.)   The request was received by the Manhattan Disclosure

Office on January 5, 2006 and was assigned to Dichter for

processing.   (Id. ¶ 23.)   Based on his involvement with

Plaintiffs' prior FOIA requests and his records therefrom,

Dichter contacted Estate Tax Attorney Susan Leboff, who was

involved with the estate tax examination of the Estate's Form

706.   (Id. ¶ 24.)   Leboff collected three boxes of responsive

documents and delivered them to Dichter.   (Id. ¶ 7.)   Around

March 20, Leboff and Dichter reviewed those documents.   (Id.

¶ 29.)   On March 27, the Disclosure Office produced to

Plaintiffs' counsel 567 pages but withheld 810 pages in full and

three pages in part.   (Id. ¶¶ 19-20; see Carrillo Decl. Ex. A.)

The IRS asserted that the documents withheld were exempt from

FOIA's disclosure requirements under FOIA exemptions (b)(5),

(b)(7)(A), and (b)(3) in conjunction with I.R.C. § 6103.   (Id.

Ex. D.)

On April 28, Plaintiffs appealed the March 27 document

production.   (See Carrillo Decl. Ex. D.)   Plaintiffs asserted

4

that no documents should be withheld because the Government did
not demonstrate that any of the claimed FOIA exemptions applied.
(Id. at 2.)  Plaintiffs also demanded production of more, albeit
unspecified, documents on the basis that their counsel possessed
responsive documents that the Government did not produce.  (Id.)
On September 11, the Government denied Plaintiffs' appeal and
advised them of their legal remedies.  (Id. Ex. G.)

## C.  Plaintiffs' April 3, 2007 FOIA Request

On April 3, 2007—about seven months after their prior two
FOIA appeals were decided— Plaintiffs' counsel filed on
Plaintiffs' behalf a third FOIA request with the IRS.  (Beamon
Decl. Ex. A at 1.)  The request sought:

> All records created or modified, whether by or on
> behalf of the Internal Revenue Service or by any other
> person or entity, or received by the Internal Revenue
> Service, in the period from December 16, 2005 to the
> present and pertaining to the examination of the Form
> 706 filed in 2003 for the above-referenced Estate,
> excluding (i) copies of the Form 706 itself, but only
> to the extent such copies are identical to the Form
> 706 as filed, and (ii) copies of correspondence and
> documents submitted by me or by the Executors to the
> Internal Revenue Service in connection with the
> examination of the Estate's Form 706, but only to the
> extent such copies are identical to the correspondence
> and documents as submitted to the Service.

(Id.)  The request was received by the Philadelphia Disclosure
Office on April 3, 2007 (id. Ex. B) and was assigned to Senior
Disclosure Specialist Nanette Beamon for processing (id. ¶ 3).

5

Because she had no involvement with Plaintiffs' prior FOIA
requests, Beamon began processing the request by searching the
IRS's Electronic Disclosure Information Management System for
any prior activity by Plaintiffs.  (Id. ¶ 4.)  Her search
revealed that Dichter had worked on Plaintiffs' prior requests.
(Id.)  She spoke with Dichter, who provided her with background
on Plaintiffs' requests.  (Id.)  Beamon then conducted her
search: she searched other IRS databases; she procured
Plaintiffs' Form 706 administrative file; and she obtained
documents from Glasel and Leboff and spoke with them about their
prior involvement with Plaintiffs' requests.  (Id. ¶¶ 4-11.)
When her search was complete, Beamon reviewed the documents she
had obtained.  (Id. ¶¶ 11, 14.)  On February 6, 2008, the
Disclosure Office produced to Plaintiffs' counsel 1,618 pages
but withheld 413 pages in full and 12 pages in part.  (Id.
¶¶ 15-16; see Carrillo Decl. Ex. I.)  The IRS asserted that the
documents withheld were exempt from FOIA's disclosure
requirements under FOIA exemptions (b)(5), (b)(7)(D), and (b)(3)
in conjunction with I.R.C. § 6103.  (Beamon Decl. ¶ 16.)

On March 10, Plaintiffs appealed the February 6 document
production.  (See Carrillo Decl. Ex. H.)  Plaintiffs asserted
that no documents should be withheld because the Government did
not demonstrate that any of the claimed FOIA exemptions applied.
(Id. at 2-3.)  Plaintiffs also demanded production of more,

6

albeit unspecified, documents on the grounds that (1) there were gaps in the numbering of the documents actually produced and (2) the Government had already waived any privilege it had asserted. (Id.)  On June 24, the Government denied Plaintiffs' appeal and advised them of their legal remedies.  (Id. Ex. K.)

On November 21, 2008, Plaintiffs instituted this action by filing a complaint seeking production of the withheld responsive documents and reasonable attorneys' fees and expenses.  (See Compl. ¶ 37.)  On February 11, 2009, the Government filed an Answer.  (See Answer.)  Both parties subsequently moved for summary judgment.  Thereafter, in response to Plaintiffs' moving brief, Gregory searched the IRS's litigation files from their Tax Court case against Plaintiffs.  (Gregory 2d Decl. ¶ 5.) Gregory found nothing but the Administrative File from that case, which contained 190 documents that were submitted to the Tax Court jointly by Plaintiffs and the Government.  (Id.)  On September 21, 2009, the Government produced those 190 documents in further response to Plaintiffs' December 6, 2005 FOIA request.  (See La Morte Supp. Decl. Ex. B; Gregory 2d Decl. ¶ 5.)

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under FOIA.

III. DISCUSSION

### A.  FOIA Summary Judgment Standards

Congress enacted FOIA "to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotation marks omitted).  FOIA's broad disclosure mandate consequently requires disclosure of documents unless they fall within one of the enumerated exemptions.  See, e.g., Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7 (2001).  These exemptions embody Congress's recognition that not all information should be released to the public, see Ctr. for Nat'l Sec. Studies v. Dep't of Justice, 331 F.3d 918, 925 (D.C. Cir. 2003), but "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act," Klamath, 532 U.S. at 7-8.  Thus, while courts are reminded to give the exemptions "meaningful reach and application," John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989), the fundamental directive remains that they should be given "a narrow compass," Klamath, 532 U.S. at 8; see also Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988) (exemptions are to be "narrowly construed with all doubts resolved in favor of disclosure").

Summary judgment is the preferred procedural vehicle for resolving FOIA disputes, and the attendant standards are well-defined in this Circuit:

> In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden. Affidavits submitted by an agency are "accorded a presumption of good faith," [and,] accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may forgo discovery and award summary judgment on the basis of affidavits.
>
> In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.

Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)

(citations and internal quotation marks omitted); see Jones-Edwards v. Appeal Bd. of Nat'l Sec. Agency, 196 F. App'x 36, 37 (2d Cir. 2006).

## B.    Application to Plaintiffs' FOIA Claims

The parties dispute on numerous grounds the propriety of
the Government's withholding of certain documents.    Plaintiffs
challenge not only the adequacy of the Government's searches but
also the applicability of most of the claimed exemptions and the
sufficiency of the Government's affidavits.    As discussed below,
none of Plaintiffs' contentions has merit, and so the Government
must prevail on both motions.

### 1.    Adequacy of the Searches

The Government must establish the adequacy of its searches
by showing "that the agency made a good faith effort to search
for the requested documents, using methods 'reasonably
calculated' to produce documents responsive to the FOIA
request."    Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356,
366 (S.D.N.Y. 2002) (quoting Weisberg v. Dep't of Justice, 745
F.2d 1476, 1485 (D.C. Cir. 1984)).    This standard does not
demand perfection, and thus failure to return all responsive
documents is not necessarily inconsistent with reasonableness:
an agency "is not expected to take extraordinary measures to
find the requested records, but only to conduct a search
reasonably designed to identify and locate responsive
documents."    Id. at 368.    As noted above, such reasonableness
may be established solely on the basis of the Government's

relatively detailed, non-conclusory affidavits that are submitted in good faith.  See Carney, 19 F.3d at 812; SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (2d Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."  Carney, 19 F.3d at 814.

    Here, the Government contends that its searches for responsive documents were adequate because its methods were reasonable as a matter of law and were carried out in good faith.  Plaintiffs assert three main reasons why the Government's searches were inadequate: (1) the search procedures were less exhaustive than the one it used in the previous FOIA request; (2) the IRS officials whose affidavits describe the searches do not have personal knowledge of the searches and so cannot testify to their adequacy; and (3) Plaintiffs can identify certain responsive documents that the Government has not produced.  The Court finds Plaintiffs' arguments meritless and concludes that the Government's searches were adequate as a matter of law.

    With respect to the December 6, 2005 request, the Government relies on the Declaration of Alan Dichter and the

11

Second Declaration of Rachel Gregory to establish the adequacy
of its search.  According to these Declarations, Dichter
determined that the responsive records would be found among the
records compiled by the Appeals Office.  (Dichter Decl. ¶ 8.)
Based on his experience with Plaintiffs' previous FOIA request,
Dichter sent the December 6 request to Glasel, who had been
involved with Plaintiffs' appeal.  (Id. ¶¶ 3-7, 9-10.)  On
Glasel's recommendation, Dichter also sent the request to
Weitzman.  (Id. ¶¶ 11, 13, 15.)  Glasel and Weitzman compiled
all the documents they deemed responsive, and Dichter and Glasel
reviewed the documents.  (Id. ¶¶ 16-18.)  Then the Government
produced the documents to Plaintiffs' counsel.  (Id. ¶¶ 19-20.)
Upon reading Plaintiffs' opening brief in these motions, Rachel
Gregory performed another search.  (Gregory 2d Decl. ¶ 5.)  She
found and produced to Plaintiffs' counsel more documents,
although these were documents Plaintiffs' counsel already
possessed.  (Id.)

     The Court finds both that the Dichter and Gregory
Declarations are sufficiently specific and that the searches
they describe were reasonably calculated to return all the
documents responsive to Plaintiffs' FOIA request.  Therefore,
the Government has satisfied its burden to show that the search
was adequate.

In opposition, Plaintiffs raise a host of misguided arguments, many of which this Court rejected on similar facts in Adamowicz I. As a preliminary matter, in their opening brief, Plaintiffs misrepresent the applicable law for determining the adequacy of the Government's search. Plaintiffs' proffered legal standard for adequacy states: "a government agency must, at a minimum, submit declarations from its officers who actually supervised and conducted the search in question that contain detailed explanations of the search itself and that confirm that all files that may contain responsive materials were searched." (Pls' Mem. Supp. Summ. J. 4.) This statement is plainly misleading, and none of the cases in Plaintiffs' lengthy string citation supports these legal requirements. Indeed, Carney— Plaintiffs' main case in support of this proposition—clearly shows the law is otherwise. See 19 F.3d at 814 (holding that "there is no need for the agency to supply affidavits from each individual who participated in the actual search").

Plaintiffs argue, first, that the search procedures described in Dichter's Declaration were less detailed than the search procedures described in Adamowicz I, which this Court held to be adequate as a matter of law. See 552 F. Supp. 2d at 361-62. Plaintiffs assume that the search in Adamowicz I was only minimally adequate; therefore, they conclude, anything less must be inadequate. But Plaintiffs' argument is unsound because

13

the Court did not so characterize the Adamowicz I search.   And

even if the search in Adamowicz I were in fact minimally

adequate, a comparison of Dichter's affidavit in that action

with his affidavit in this action shows no difference in the

level of detail.  (Compare La Morte Supp. Decl. Ex. A (showing

sufficient detail in Dichter's 2007 Declaration), with Dichter

Decl. (showing the same level of detail).)   Therefore,

Plaintiffs' comparison argument fails.

        Second, Plaintiffs argue that Dichter's Declaration is

insufficient because it does not specify the standard of

"responsiveness" the Government used in its searches.   This

theory, presumably based on Plaintiffs' incorrect legal

standard, attempts to impose a burden on the Government's

affidavits that is above and beyond what the law requires.   See

Carney, 19 F.3d at 812-14.   Dichter's Declaration is both

reasonably detailed and non-conclusory; thus, the absence of

Dichter's standard of "responsiveness" does not defeat the grant

of summary judgment for the Government.

        Third, Plaintiffs argue that the statements in Dichter's

Declaration regarding the adequacy of the search are "no more

than double hearsay" because Dichter delegated the search to

Glasel, who himself delegated the search to Weitzman.   (Pls'

Mem. Supp. Summ. J. 6-7.)   Again, Plaintiffs' argument ignores

the proper legal standard: "An affidavit from an agency employee

responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." Carney, 19 F.3d at 814. Dichter was the officer assigned to process Plaintiffs' FOIA request, and his affidavit was reasonably detailed and non-conclusory. Therefore, he is competent to testify to the adequacy of the Government's search, and his affidavit is sufficient to carry the Government's burden on its motion. Affidavits from Glasel and Weitzman are unnecessary.

Fourth, Plaintiffs argue that Dichter's failure to perform an IDRS computer search for files renders his search inadequate. But as the Government points out, Plaintiffs wholly ignore the purpose of performing the IDRS search, which Dichter discussed in his Declarations both in this action and in Adamowicz I. (See Dichter Decl. ¶ 3 and n.1; La Morte Supp. Decl. Ex. A ¶ 4 and n.1.) The IDRS search is useful "when searching for documents related to a Form 706 examination." (Dichter Decl. ¶ 3.) It reveals "where the Form 706 was being examined and which office within the IRS . . . maintained control over the responsive records." (Id.) That is why the search is usually the first step in processing a FOIA request for documents relating to a Form 706 examination. (Id.) Here, however, Dichter already knew from his experience with Plaintiffs'

15

previous FOIA request which office maintained control over the responsive records. Thus, in the interest of efficiency, Dichter eliminated the IDRS search because he already knew what result it would produce. And the fact that Glasel and Weitzman actually provided responsive documents confirms that the IDRS search would have been redundant. Thus, Plaintiffs' argument based on the lack of an IDRS computer search fails.

Fifth, Plaintiffs argue that some of the disclosed documents "make it evident that there are other responsive documents that were not produced." (Pls' Mem. Supp. Summ. J. 10.) Yet the applicable legal standard "does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness: an agency 'is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents.'" Adamowicz I, 552 F. Supp. 2d at 361 (quoting Garcia, 181 F. Supp. 2d at 368). Thus, even if the Government failed to produce every single responsive document, Plaintiffs would still not have raised a genuine issue of material fact regarding the adequacy of the Government's search. Therefore, Plaintiffs' argument based on their suspicion that certain documents were withheld must fail.

Sixth, Plaintiffs argue that "it cannot be known, absent declarations from the Officers in question, that [those Officers] had a proper understanding of Defendant's responsibilities when responding to a FOIA request." (Pls' Mem. Supp. Summ. J. 8.) Again, Plaintiffs ignore the proper legal standard in favor of their own incorrect version. It is well established that the Government is entitled to a presumption of good faith. Carney, 19 F.3d at 812. Plaintiffs' self-serving impugnation of the Government's good faith, without any supporting evidence, does not raise an issue of fact with respect to the adequacy of the Government's search. Moreover, Gregory's search and production of additional documents during the briefing of these motions suggests "a stronger, rather than a weaker, basis" for accepting the integrity of the Government's search. See Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986) (internal quotation omitted). Therefore, the Court concludes that the Government's search in response to Plaintiffs' December 6, 2005 FOIA request was adequate as a matter of law.

With respect to the December 16, 2005 request, the Government characterizes Plaintiffs' request as merely an extension of the FOIA request at issue in Adamowicz I, in which this Court held that the Government's search was adequate as a matter of law. That previous FOIA request sought:

17

> All records pertaining to the examination of the Form
> 706 filed in 2003 for the [Adamowicz] Estate,
> excluding (i) copies of the Form 706 itself . . . ,
> and (ii) copies of correspondence and documents
> submitted by [Counsel for the Estate] to the Internal
> Revenue Service . . . .

Adamowicz I, 552 F. Supp. 2d at 359. By comparison, Plaintiffs'
December 16 request sought precisely the same information, but
only from the period beginning March 10, 2005—the date of the
Adamowicz I request. (See Dichter Decl. Ex. C at 1.)
Therefore, the Court concludes that the Government's
characterization of the December 16 request is correct.

    The Government relies on the Declarations of Alan Dichter
and Susan Leboff to establish the adequacy of its search in
response to this request. As those Declarations state, Dichter
began processing the December 16 request by reviewing his
records of the March 10 search he conducted. (Id. ¶ 24.) Those
records directed him to Susan Leboff, the Estate Tax Attorney
responsible for the Estate's examination. (Id.) After Dichter
sent her the December 16 FOIA request, Leboff searched all of
her electronic and paper files relating to the Estate. (Leboff
Decl. ¶ 4.) Leboff "considered all documents contained in
[those] files that fell on or after the dates specified . . . to
be responsive . . . , with the exception of any documents
unrelated to the Examination that [she] misfiled." (Id.)
Further, Leboff was "unaware of additional [places] where

responsive documents would be located." (Id.)  Dichter and
Leboff reviewed the three boxes of responsive documents she
provided, and the two of them confirmed that those boxes
represented the universe of responsive documents. (See Dichter
Decl. ¶¶ 26, 28, 30.)  The Government then produced to
Plaintiffs' counsel all the documents it believed were not
exempt from disclosure.  (Id. ¶ 32.)

     The Court finds both that the Dichter and Leboff
Declarations are sufficiently specific and that the searches
they describe were reasonably calculated to return all the
documents responsive to Plaintiffs' FOIA request.  Therefore,
the Government has satisfied its burden to show that the search
was adequate.

     In opposition, Plaintiffs generally raise the same
arguments they made with respect to the December 6 FOIA request.
The Court rejects those arguments for the reasons described
above.  Plaintiffs also raise one new argument: that Leboff
could not have known she was the only person who possessed
documents relating to the Form 706 examination without first
inquiring of other IRS employees whether they also possessed
responsive documents.  Plaintiffs' argument simply ignores
Leboff's statement, "I was the sole employee assigned to
conducting the [Estate's Form 706] examination." (Leboff Decl.
¶ 2.)  Thus, Plaintiff's argument fails because it has no basis

19

in fact.  Therefore, the Court concludes that the Government's
search in response to Plaintiffs' December 16, 2005 FOIA request
was adequate as a matter of law.

     With respect to the April 3, 2007 request, the Government
characterizes Plaintiffs' request as yet another extension of
the FOIA request at issue in Adamowicz I.  Because the language
in the April 3 request mirrors that of the March 10 and December
16 requests in all respects except the specified time period,
the Government's characterization is correct.

     The Government relies on the Declaration of Nanette Beamon
to establish the adequacy of its search in response to this
request.  Beamon's Declaration indicates that she performed a
search that was almost identical to one Dichter performed for
the December 16 request.  Thus, the Court finds both that the
Beamon Declaration is sufficiently specific and that the search
it describes was reasonably calculated to return all the
documents responsive to Plaintiffs' FOIA request.  Therefore,
the Government has satisfied its burden to show that the search
was adequate.

     In opposition, Plaintiffs offer only the same arguments
they asserted with respect to the adequacy of the other two
searches.  The Court rejects those arguments for the reasons
discussed above.  Plaintiffs' only remaining contention, which
the Court derives from a series of disorganized allegations and

innuendoes checkered throughout their reply brief, is that the
Government had an ulterior motive for auditing the Estate and
then subsequently concealed documents from Plaintiffs in order
to hide that motive.  This unfounded speculation has no basis in
fact or law, and these suggestions are insufficient to overcome
the presumption that the Government responded to Plaintiffs'
FOIA requests in good faith.  Accordingly, the Government's
motion with respect to the adequacy of the searches is GRANTED,
and Plaintiff's cross-motion is DENIED.

### 2.   Exemption 2: Documents Containing Internal Agency Information

Under FOIA Exemption 2, 5 U.S.C. § 552(b)(2), the
Government may withhold from disclosure records "related solely
to the internal personnel rules and practices of an agency."
This information concerns "those rules and practices that affect
the internal workings of an agency[,] and, therefore, would be
of no genuine public interest."  Massey v. F.B.I., 3 F.3d 620,
622 (2d Cir. 1993) (internal quotations omitted).  "Such
internal agency information may be withheld if it is of no
genuine public interest or[] if the material is of public
interest[] and the government demonstrates that disclosure of
the material would risk circumvention of lawful agency
regulations."  Id. (internal quotations omitted).

Here, the Government offers the Gregory Declaration in

support of its withholdings under Exemption 2. According to

that Declaration, the information withheld consists of the

office telephone number of an IRS employee and the Westlaw

identification number of an IRS employee, neither of which is

made available to the public. (Gregory Decl. ¶¶ 15-16.) The

Court concludes that the Gregory Declaration is non-conclusory

and sufficiently specific to satisfy the Government's burden.

Plaintiffs do not contest these withholdings. Accordingly, the

Government's unopposed motion with respect to documents withheld

or redacted under Exemption 2 is GRANTED.

### 3. Exemption 3: Documents Specifically Exempted by Statute

Exemption 3 authorizes the Government to withhold any

document "specifically exempted from disclosure by statute."

5 U.S.C. § 552(b)(3). To withhold documents properly under this

exemption, the Government must establish both that the statute

invoked qualifies under Exemption 3 and that the documents

withheld qualify for nondisclosure under that statute. See

C.I.A. v. Sims, 471 U.S. 159, 167 (1985).

In this case, the Government relies on I.R.C. § 6103, 26

U.S.C. § 6103 (see Gregory Decl. ¶¶ 16-18), which qualifies as

an Exemption 3 statute, see, e.g., Church of Scientology v.

I.R.S., 484 U.S. 9, 11 (1987).  It generally prohibits

disclosure of "return information," see § 6103(a), defined as:

> [a] taxpayer's identity, the nature, source, or amount
> of his income, payments, receipts, deductions,
> exemptions, credits, assets, liabilities, net worth,
> tax liability, tax withheld, deficiencies,
> overassessments, or tax payments, whether the
> taxpayer's return was, is being, or will be examined
> or subject to other investigation or processing, or
> any other data, received by, recorded by, prepared by,
> furnished to, or collected by the Secretary with
> respect to a return or with respect to the
> determination of the existence, or possible existence,
> of liability (or the amount thereof) of any person
> under this title . . . .

26 U.S.C. § 6103(b)(2)(A).  This Court previously determined in

Adamowicz I that the phrase "with respect to a return" limits

only the phrase "any other data"; thus, "return information"

includes both information falling under one of the enumerated

categories, whether or not obtained in connection with a return,

and "any other data . . . with respect to a return."  Adamowicz

I, 552 F. Supp. 2d at 368-69.

    According to the Gregory Declaration, all documents

withheld under Exemption 3 contain information about other

taxpayers including their names, social security numbers,

taxpayer identification numbers, addresses, contact information,

and filing information.  (Gregory Decl. ¶¶ 17-22, Exs. A, B.)

The Gregory Declaration is non-conclusory and sufficiently

specific to satisfy the Government's burden on its motion for

summary judgment.  (See id.)  Thus, the Government properly withheld these documents under Exemption 3 and § 6103.

In opposition, Plaintiffs assert three arguments.  First, Plaintiffs challenge the specificity of the Gregory Declaration. As with all the other exemptions in dispute, Plaintiffs seek a level of detail in the Gregory Declaration that is simply not required by law.  Plaintiffs cite no authority holding that the Government's affidavits are required to be so detailed. Therefore, the Court rejects Plaintiffs' first argument.

Second, Plaintiffs assert that the Government is obligated to produce documents containing information about both Plaintiffs in their individual capacities and entities in which Plaintiffs, in their individual capacities, are interested. The Court rejects this assertion.  Section 6103 specifically refers to a "taxpayer's" information, and the Estate is not the same taxpayer as Plaintiffs or the entities.  From the Estate's perspective, all of this is third-party information the Estate is not entitled to receive without appropriate authorization. Because Counsel submitted the FOIA requests on behalf of Plaintiffs, not in their individual capacities, but in their capacities as executors of the Estate (see Sembler Decl. Exs. A, I, L), the Government had no obligation to produce documents containing either of these kinds of information.  Therefore, Plaintiffs' second argument fails.

Third, Plaintiffs argue that § 6103(e) entitles Plaintiffs to information regarding both entities in which the Estate is a shareholder and trusts in which Mary Adamowicz was grantor and, for a time, trustee, because Plaintiffs have a material interest in such information.  Although § 6103(e) does in fact permit such disclosure, Plaintiffs' argument fails because they have not complied with other prerequisites to obtaining such information.  Under 26 C.F.R. § 601.702(c)(4)(i)(E), (c)(5)(iii)(C), and regulations promulgated pursuant to 26 U.S.C. § 6103, before the Government may produce such information, Plaintiffs must show that the Estate is entitled to receive the business information they seek.  The appropriate procedure is for Plaintiffs to execute and submit to the IRS a Form 8821.  (See La Morte Supp. Decl. Ex. C at 1-2.)  Although Plaintiffs characterize this requirement as a new, additional burden, the IRS's September 10, 2009 letter to Frederick Sembler makes clear that Plaintiffs have simply failed to follow the proper procedure to obtain these documents.  (See id.)  Plaintiffs do not contend that they have satisfied this requirement, but they nevertheless ask the Court to order the Government to produce documents Plaintiffs have not properly requested.  The Court declines to do so.  Therefore, Plaintiffs' third argument fails.  Accordingly, the Government's motion with

respect to documents withheld or redacted under Exemption 3 and § 6103 is GRANTED, and Plaintiff's motion is DENIED.

### 4.    Exemption 5:  Documents Subject to Privilege

Under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the Government may withhold from disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  This includes the so-called "deliberative process" privilege, as well as the attorney-client and the attorney work-product privileges, see N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975), each of which the Government has invoked in this case (Gregory Decl. ¶¶ 23–43).  The Court may "grant summary judgment in favor of an agency on the basis of agency affidavits [alone] if they contain reasonable specificity of detail rather than merely conclusory statements."  Grand Cent. P'ship, 166 F.3d at 478 (internal quotation omitted).  Thus, the declarations must, at the very least, establish a logical connection between the information withheld and the exemption claimed.  See, e.g., American-Arab Anti-Discrimination Comm. v. Dep't of Homeland Sec., 516 F. Supp. 2d 83, 86 (D.D.C. 2007); Berger v. I.R.S., 487 F. Supp. 2d 482, 492-92 (D.N.J. 2007), aff'd, 288 F. App'x 829 (3d Cir. 2008), cert. denied, 129 S.Ct.

2789 (2009); Amro v. U.S. Customs Service, 128 F. Supp. 2d 776,

782 (E.D. Pa. 2001).  The requirement of reasonable specificity

> forces the government to analyze carefully any
> material withheld, it enables the trial court to
> fulfill its duty of ruling on the applicability of the
> exemption, and it enables the adversary system to
> operate by giving the requester as much information as
> possible, on the basis of which he can present his
> case to the trial court.

Judicial Watch v. F.D.A., 449 F.3d 141, 146 (D.C. Cir. 2006)

(quoting Keys v. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir.

1987)).  Once the adequacy of the Government's affidavits is

established, they benefit from a presumption of good faith,

which "cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents."  Grand Cent.

P'ship, 166 F.3d at 489 (internal quotation marks omitted).

Under these principles and for the reasons stated below,

the Court finds that the Government's affidavits are

sufficiently specific to support its Exemption 5 withholdings.

### a.    Deliberative Process Privilege

To qualify for the deliberative process privilege under

Exemption 5, "a document must be both 'predecisional' and

'deliberative.'"  Grand Cent. P'ship, 166 F.3d at 482 (citing

Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168,

184 (1975)).  To be "predecisional," the document must be

"prepared in order to assist an agency decisionmaker in arriving

at his decision," Hopkins v. Dep't of Housing and Urban Dev.,
929 F.2d 81, 84 (2d. Cir. 1991), and the Government must
"'pinpoint the specific agency decision to which the document
correlates' and 'verify that the document precedes, in temporal
sequence, the 'decision' to which it relates,'" Grand Cent.
P'ship, 166 F.3d at 482 (quoting Providence Journal Co. v. Dep't
of the Army, 981 F.2d 552, 557 (1st Cir. 1992)).  A document is
"deliberative" when it is "'actually . . . related to the
process by which policies are formulated.'"  Id. (quoting
Hopkins, 929 F.2d at 84).  Further, a document does not qualify
for the privilege if it reflects only the policy of the agency,
rather than "the personal opinions of the writer," or is "merely
peripheral to actual policy formation."  Id. (quoting Ethyl
Corp. v. E.P.A., 25 F.3d 1241, 1248 (4th Cir. 1994)).
Additionally, purely factual matters are not within the ambit of
the privilege.  See Hopkins, 929 F.2d at 84.

    In support of its withholdings under the deliberative
process privilege, the Government submits the Gregory
Declaration.  The Gregory Declaration indicates that the
Government has withheld the following categories of documents as
deliberative: (1) Leboff's notes reflecting communications with
Glasel regarding the Examination and her interview with the
confidential informant; (2) Leboff's correspondence with Glasel
discussing the Examination; (3) correspondence between Leboff

28

and Dichter regarding processing of the previous FOIA request;
(4) Leboff's communications with Glasel and Special Counsel Jan
Geier regarding the prior FOIA requests; (5) Leboff's
communications with DOJ and IRS attorneys concerning the summons
litigations; (6) Leboff's correspondence with IRS attorneys
concerning the Tax Court litigation; (7) a memorandum prepared
by a fraud advisor to Leboff regarding a third party; (8)
correspondence between IRS and DOJ attorneys regarding the
related FOIA litigation; and (9) drafts of briefs, declarations,
and other documents pertaining to the summons litigation.  (See
Gregory Decl. ¶¶ 25, 29, Exs. A, B.)  The Government released
all segregable portions of these documents.

The Court concludes that all of these categories of
documents were properly withheld under the deliberative process
privilege.  They are all predecisional because they all
temporally precede and relate to specific agency decisions: the
handling of the Examination, the processing of FOIA requests,
and the Government's positions in various litigations.  See
(Gregory Decl. ¶ 29), Grand Cent. P'ship, 166 F.3d at 483.  They
are all deliberative because they all reflect the consultative
process underlying the IRS's decisions, see Grand Central
P'ship, 166 F.3d at 483: they contain information including
recommendations, advice, subjective beliefs, and opinions (see
Gregory Decl. ¶ 29).  All of this information assisted the IRS's

attorneys in making legal and strategic decisions.  (See id.
¶¶ 25, 29.)  Therefore, the Gregory Declaration satisfies the
Government's burden on its motion for summary judgment.

In opposition, Plaintiffs assert two arguments, neither of
which has merit.  First, Plaintiffs make a general challenge to
the specificity of the Gregory Declaration.  Plaintiffs also
offer the unsupported conclusion that the justifications for
withholding stated in Gregory's sworn declaration "def[y]
credulity."  (Pls' Mem. Supp. Summ J. 15.)  Yet in light of the
Court's finding that the Gregory Declaration satisfies the
Government's obligation, Plaintiffs' first argument fails.

Second, Plaintiffs contend that the documents are not
predecisional because they constitute the execution of
previously formed policies rather than the development of new
ones.  The Court of Appeals, however, has held that documents
are predecisional where they "directly relate[] to the . . .
agency decisions detailed in the [Government's] Affidavit—the
decisions to terminate [an agency] grant [to a private party],
to issue [a] sanction [to a private party], and to withdraw
[that sanction]."  Grand Cent. P'ship, 166 F.3d at 483.  The
decisions at issue in this case are even more suggestive of
policies than the ones in Grand Central Partnership because they
relate not only to the IRS's internal decisions regarding the
Estate but also to the positions the IRS was planning to take in

litigation.  (See Gregory Decl. ¶¶ 25, 29, Exs. A, B.)
Therefore, Plaintiffs' argument that the documents are not
predecisional fails.  Accordingly, the Government's motion with
respect to documents withheld or redacted under the deliberative
process privilege is GRANTED, and Plaintiffs' motion is DENIED.

                  b.    Attorney-client and
                        Work-product Privileges

"The attorney-client privilege protects confidential
communications from clients to their attorneys made for the
purpose of securing legal advice or services. . . . In the
governmental context, the 'client' may be the agency and the
attorney may be an agency lawyer." Tax Analysts v. I.R.S., 117
F.3d 607, 618 (D.C. Cir. 1997).  One line of cases holds that
certain types of legal advice are nevertheless not within the
FOIA attorney/client privilege.  See id. at 619; see also
Schlefer v. United States, 702 F.2d 233 (D.C. Cir. 1983);
Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866
(D.C. Cir. 1980).  Those cases distinguish certain documents
issued by the IRS Office of Chief Counsel, called Field Service
Advice Memoranda ("FSAs"), as unqualified for attorney-client
privilege because, as opposed to other types of legal advice,
FSAs "create a body of private law, applied routinely as the

31

government's legal position in its dealings with taxpayers."
Tax Analysts, 117 F.3d at 619.

On the other hand, "[t]he attorney work product privilege
protects 'the files and the mental impressions of an attorney
. . . reflected, of course, in interviews, statements,
memoranda, correspondence, briefs, mental impressions, personal
beliefs, and countless other tangible and intangible ways'
prepared in anticipation of litigation."  A. Michael's Piano,
Inc. v. F.T.C., 18 F.3d 138, 146 (2d Cir. 1994) (quoting Hickman
v. Taylor, 329 U.S. 495, 510-11 (1947)).  Thus, to justify non-
disclosure under this exemption, the Government must show that
the material "(1) [is] a document or tangible thing, (2) that
was prepared in anticipation of litigation, and (3) was prepared
by or for a party, or by or for his representative."  ECDC
Envt'l v. New York Marine & Gen. Ins. Co., No. 96 Civ. 6033,
1998 WL 614478, at *11 (S.D.N.Y. June 4, 1998).

With respect to the attorney-client privilege, the
Government asserts that the following categories of documents
are properly withheld: (1) communications between Leboff and
Glasel regarding the Examination, processing of the March 14,
2005 FOIA request, the Estate's application to pay for an
extension under I.R.C. § 6166, the Estate's application for a
release of a lien, the summons litigation, the Tax Court
litigation, and the related FOIA litigation; (2) communications

between and among Leboff, Glasel, and/or IRS Chief Counsel
Attorney Marie Small and her paralegal regarding the Tax Court
litigation; (3) communications between Leboff and her manager,
Patrick Leahy, Glasel, DOJ attorneys Kenneth Rosenberg and
Andrea Tebbetts, Assistant United States Attorney ("AUSA") Diane
Beckmann, and/or IRS Special Counsel Geier concerning the
summons litigation; (4) communications between Leboff, Glasel,
IRS National Office Attorney Joel McMahan, and AUSA Lara
Eshkenazi concerning the related FOIA litigation; (5)
communications between and among Leboff, Geier and Glasel
regarding the Examination and prior FOIA requests; and (6)
Leboff's notes reflecting some of the communications described
above.  (See Gregory Decl. ¶ 30, Exs. A, B.)  As Glasel's
Declaration states, "All of these communications involve
exchanges of information for the purposes of providing
professional advice regarding the scope, strategy, direction,
and focus of the Examination, as well as information [Glasel]
solicited from Leboff in connection with formulating the IRS's
strategy with respect to the various litigations involving the
Estate."  (Glasel Decl. ¶ 8.)  Glasel also indicates that he is
"familiar with Field Service Advice Memoranda" ("FSAs") under
Tax Analysts and that none of the communications constitutes
FSAs because they were not "authored or reviewed by the National
Office."  (Id. ¶¶ 9-10.)  Finally, "all of the communication

33

included in the documents . . . was made with the expectation of confidentiality."   (Id. ¶ 11; accord Leboff Decl. ¶ 6 ("All attorney-client communication was with the expectation of confidentiality; at no time were the contents of any attorney-client communication shared with anyone outside of the IRS except for the communication itself with the Department of Justice.").)

The Court concludes that the Gregory, Glasel, and Leboff Declarations satisfy the Government's burden to show that it properly withheld documents under the attorney-client privilege. The Declarations are sufficiently specific and non-conclusory, and all of the documents they describe are properly subject to the attorney-client privilege because (1) they contain either communications between an attorney and a client or, in the case of Leboff's notes, the client's memorialization of such communications; (2) the communications were for the purpose of providing legal advice; and (3) all the communications were made with the expectation of confidentiality.   This is sufficient to carry the Government's burden on its motion for summary judgment.

In opposition, Plaintiffs assert four arguments ranging from the frivolous to the outright misleading.   First, Plaintiffs assert that the Government, "for the most part, does not disclose such basic information as the date or . . . the

subject matter either of these documents or of any claimed
advice . . . ."  (Pls' Mem. Supp. Summ. J. 19.)  This assertion
is simply false: it mischaracterizes Rachel Gregory's
Declaration and the attached exhibits.  The exhibits to the
Gregory Declaration show that the Government included a date for
every document withheld solely under the attorney-client
privilege, save for one apparently inadvertent omission that the
Government has since corrected.  (See Gregory Decl. Exs. A, B.)
The exhibits also state the parties communicating and the
subject matter of all attorney-client communications (see id.),
and the Government provides even more information in the
exhibits to Gregory's Second Declaration (see Gregory 2d Decl.
Exs. A1, B1).  In sum, Plaintiffs' assertion regarding the level
of detail contained in the Government's submissions is factually
incorrect.  To the extent it constitutes an argument that the
Government's Declarations were not sufficiently specific,
Plaintiffs seek a level of detail that the law does not require.
Thus, the Court rejects Plaintiffs' first argument.

Second, Plaintiffs argue that the documents are not subject
to the privilege because Glasel's Declaration states that he
provided professional advice, not legal advice.  There are two
serious problems with this argument.  First, as a legal
argument, it is utterly frivolous.  It ignores the fact that
both the Supreme Court of the United States and the Second

Circuit Court of Appeals have used the term "professional advice" to mean "legal advice" in appropriate contexts.  See Upjohn Co. v. United States, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." (emphasis added)); In re Six Grand Jury Witnesses, 979 F.2d 939, 945–46 (2d Cir. 1992) (stating that the privilege covers "communications between a lawyer and his or her client—both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information" (emphasis added)).  And it ignores two whole paragraphs of the Glasel Declaration.  (See ¶¶ 3 ("Throughout the Examination I provided, and continue to provide, legal advice to Susan Leboff . . . and Patrick Leahy."), 4 ("I have provided, and continue to provide, legal advice to Leboff and Leahy through the on-going litigation[s in various federal courts]."))

Second, and more troubling to the Court, Plaintiffs' counsel takes the term "professional advice" out of its context and uses it in a misleading and self-serving fashion. Plaintiffs' moving brief contains the following lines:

> Defendant tells us that 'all of the withheld attorney-client communications were made for purposes of obtaining or providing professional advice in

> connection with' the matters described.   Gregory's
> Jun. 25, 2009 Decl. ¶ 38 (emphasis added); Glasel's
> Jun. 25, 2009 Decl. ¶ 8 (similar statement).

(Pls' Mem. Supp. Summ. J. 19-20.)   Yet the Gregory Declaration

states that the professional advice was provided "in connection

with the Examination and/or the various litigations involving

Plaintiffs."   (Gregory Decl. ¶ 38.)   And the Glasel Declaration

states: "All of these communications involve exchanges of

information for the purposes of providing professional advice

regarding the scope, strategy, direction, and focus of the

Examination, as well as information I solicited from Leboff in

connection with formulating the IRS's strategy with respect to

the various litigations involving the Estate."   (Glasel Decl.

¶ 8 (emphases added).)   The emphasized portions of these

Declarations, which Plaintiffs' brief conveniently omits, make

clear that the communications at issue involved legal advice.

They also make clear that counsel plainly attempts to mislead

the Court by omitting these important phrases from the text of

the brief and burying them in a citation.   These are not serious

legal arguments; they are merely misleading characterizations of

the Government's evidence.   As such, they do not raise a genuine

issue of fact.

Third, Plaintiffs argue that Leboff's notes cannot be

withheld under the privilege because they are not themselves

attorney-client communications.   This argument, like the ones

37

before it, is frivolous.  The law is well settled that a client's memorialization of her confidential legal communications with her attorney are privileged.  See United States v. Defonte, 441 F.3d 92, 95 (2d Cir. 2006) ("The memorializations of private conversations [the client] had with her attorney are protected from disclosure by the attorney-client privilege . . . . absent a finding [that the client] waived the privilege.").  Therefore, this argument, too, fails.

Finally, Plaintiffs assert that Tax Analysts mandates disclosure not only of FSAs but also of documents that are sufficiently similar to FSAs.  Yet Plaintiffs neither apply this legal assertion to any documents nor draw any conclusions therefrom; in other words, they make no argument regarding Tax Analysts.  Insofar as Plaintiffs' assertion constitutes an argument that no documents should be withheld under Tax Analysts, that argument fails in light of Glasel's statement that Tax Analysts does not apply because none of the communications came from the National Office.  (See Glasel Decl. ¶¶ 9-10.)

With respect to documents withheld under the work-product privilege, the Government submits the Gregory Declaration in support of its withholdings.  According to the Gregory Declaration, the Government has withheld the following categories of documents: (1) e-mails, memoranda, and other

38

correspondence between Leboff and the various IRS and DOJ
attorneys involved with the ongoing summons litigation, Tax
Court litigation, and other FOIA litigation pertaining to the
Estate; (2) e-mails and memoranda between Leboff and various IRS
and DOJ attorneys prepared in anticipation of FOIA litigation
and the summons litigation; and (3) draft briefs, declarations,
and memoranda created with respect to the aforementioned
litigations.  (See Gregory Decl. ¶¶ 39-42, Exs. A, B.)  All of
these documents were prepared by Leboff in connection with the
various ongoing litigations.  (Id. ¶¶ 39-42.)  Further, all of
those documents contain discussions of the "ramifications of
facts, strategy, mental impressions or personal beliefs" of
Leboff pertaining to the litigations.  (Id.)  The Court
concludes that the Gregory Declaration and attached exhibits are
sufficiently specific to satisfy the Government's burden on its
motion for summary judgment.

    In opposition, Plaintiffs challenge the specificity of the
Gregory Declaration.[1]  Plaintiffs assert only that the
Government's explanations of its withholdings based on the work-
product privilege are too vague, without making any further

---

[1] In their reply brief, Plaintiffs contend that all of their
arguments regarding the attorney-client privilege apply equally
to the work-product privilege.  Although such an application of
these arguments is not clear from Plaintiffs' moving brief, the
Court rejects these arguments on the merits for the reasons
stated above.

argument.  Again, Plaintiffs demand a level of detail that the
law does not require of the Government.  Thus, Plaintiffs'
challenge with respect to the work-product privilege fails as a
matter of law.  Accordingly, the Government's motion with
respect to documents withheld or redacted under the attorney-
client privilege or work-product privilege is GRANTED, and
Plaintiff's cross-motion is DENIED.


                5.    Exemption 6: Documents Containing
                      Personnel and Medical Information

     Under Exemption 6, the Government may withhold information
contained in "personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted
invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This
includes "information [that] applies to a particular individual
. . . sought from government records," Dep't of State v.
Washington Post Co., 456 U.S. 595, 602 (1982).  The Government
must disclose the withheld documents if the public's interest in
disclosure of the information outweighs the privacy interests at
stake.  Wood v. F.B.I., 432 F.3d 78, 85-86 (2d Cir. 2005).

     Here, the IRS has withheld only two documents under
Exemption 6: one containing the direct office telephone number
of an IRS employee and one containing the personal telephone
number of a third party who is unrelated to this action.  (See

                              40

Gregory Decl. ¶ 46, Ex. A.)  Because disclosure of this private

information will tell the public nothing about "what their

government is up to," Reporters Comm., 489 U.S. at 756, the

public has no relevant interest in disclosure of these

documents.  The privacy interests at stake certainly prevail in

this situation.  See Phillips v. Immigration and Customs

Enforcement, 385 F. Supp. 2d 296, 308 (S.D.N.Y. 2005)

(withholding the telephone number of a government employee);

Amnesty Int'l v. C.I.A., No. 07 Civ. 5435, 2008 WL 2519908, at

*15-16 (S.D.N.Y. June 19, 2008) (withholding the telephone

number of a third party.)  The Court also finds that the Gregory

Declaration and attached Exhibit A are non-conclusory and

sufficiently specific.  Therefore, the Government has satisfied

its burden on its motion for summary judgment.  Because

Plaintiffs do not contest the Government's withholdings and

redactions under Exemption 6, the Government's unopposed motion

with respect to these documents is GRANTED.

### 6.    Exemption 7: Documents Exempted
### for Law Enforcement Purposes

Under Exemption 7(C), the Government may withhold "records

or information" that are "compiled for law enforcement purposes"

and that "could reasonably be expected to constitute an

unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(7)(C).  Under Exemption 7(D), the Government may
withhold documents that "could reasonably be expected to
disclose the identity of a confidential source."
§ 552(b)(7)(D).

### a.   Documents Constituting an Invasion of Privacy

To determine whether the documents in question "could
reasonably be expected to constitute an unwarranted invasion of
personal privacy," a court must balance the individual's privacy
interest against the public's interest in disclosure.  See
Reporters Comm., 489 U.S. at 762-763; Ferguson v. F.B.I., 957
F.2d 1059, 1069 (2d Cir. 1992).  In this context, the public's
interest consists solely of FOIA's aim "to open agency action to
the light of public scrutiny."  McErlean v. Dep't of Justice, 97
Civ. 7831, 1999 WL 791680, at *9 (S.D.N.Y. Sept. 30, 1999)
(quoting Reporters Comm., 489 U.S. at 771).  Thus, "[i]f release
of the documents in question would not further the goal of
opening agency action to public scrutiny, no public interest is
implicated and disclosure is not mandated."  Id.; see also Davis
v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992)
("[T]he only public interest relevant for purposes of Exemption
7(C) is one that focuses on 'the citizens' right to be informed
about what their government is up to.'").

42

The Government offers the Gregory Declaration in support of its withholdings under Exemption 7(C). Gregory indicates that the Government has withheld third parties' personal information that was compiled in furtherance of the IRS's investigation of the Estate. (Gregory Decl. ¶ 47.) This information consists of other persons' names, social security numbers, taxpayer identification numbers, addresses, other taxpayer information, other identifying information, and the direct office telephone number of an IRS employee. (Id. ¶¶ 49-52.) The Court concludes that the Government's evidence is non-conclusory and sufficiently specific to satisfy its burden on its motion for summary judgment.

In opposition, Plaintiffs assert two arguments. First, Plaintiffs argue that the documents which were also withheld under Exemption 3 and § 6103 should be disclosed because the invasion of privacy would not be unwarranted. In light of the Court's ruling granting summary judgment for the Government with respect to those documents, Plaintiffs' argument is moot. In any event, Plaintiffs do not show how disclosure of that information would "open agency action to the light of public scrutiny" so as to outweigh the individual privacy interests at stake. Reporters Comm., 489 U.S. at 771. Thus, Plaintiffs' first argument does not raise a genuine issue of fact.

Second, Plaintiffs assert in their reply brief that the Government "appears to have abandoned its previous claims that [documents also withheld under Exemption 3 and § 6103] qualify for [Exemption 7(C)]. Plaintiffs therefore are entitled to summary judgment on [that] issue . . . ." (Pls' Reply Mem. 13.) Yet Plaintiffs' premise is false, and, in any event, their conclusion does not follow. First, the Government did not abandon its Exemption 7(C) argument. The Government argued the issue in both its moving brief (see Gov't Mem. Supp. Summ. J. 21-23) and its reply brief (see Gov't Mem. Opp. & Further Supp. 23-24); therefore, it did not abandon the argument. Second, the Government's purported failure to oppose Plaintiffs' motion for summary judgment on that issue would not relieve Plaintiffs of their burden on their own summary judgment motion. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). As described above, Plaintiffs assert only one argument in support of their motion, and the Court rejects that argument on the merits. Therefore, Plaintiffs' motion would be denied even if the Government's motion had not been granted. Thus, Plaintiffs' second argument fails. Accordingly, the Government's motion with respect to documents withheld or redacted under Exemption 7(C) is GRANTED, and Plaintiffs' motion is DENIED.

b.    Documents Revealing a
Confidential Source

Under Exemption 7(D), the Government may withhold "records or information" that is (1) "compiled for law enforcement purposes" that (2) "could reasonably be expected to disclose the identity of a confidential source . . . ."  5 U.S.C. § 552(b)(7)(D).  To invoke this exemption, the Government must show not that the document withheld is confidential but that the person who provided the information did so "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).  "Where an agency relies on an express assurance of confidentiality . . . it must offer probative evidence that the source did in fact receive an express grant of confidentiality . . . , such as . . . an official's personal knowledge about the source . . . ."  Dipietro v. Exec. Office for United States Att'ys, 357 F. Supp. 2d 177, 185 (D.D.C. 2004) (internal quotation marks and citations omitted).

Here, the Government offers the Declarations of Rachel Gregory and Susan Leboff in support of its withholdings and redactions.  According to the Gregory Declaration, the information withheld would, if disclosed, "reveal the identity of a confidential source who provided Leboff with information

during the course of the [Estate's] Examination." (Gregory
Decl. ¶ 54.)  The documents have specific notations that they
contain confidential information.  (Id.)  And, based on her
lengthy conversations with Leboff, Gregory states that the
Government orally assured the source that his or her identity
would be kept confidential, and on that basis the source
provided information to the Government.  (Id.)  The Leboff
Declaration reinforces the point.  (See Leboff Decl. ¶ 7
(stating that Leboff "repeated this promise to him or her on
more than one occasion").)  Gregory goes on to discuss, in as
much detail as can reasonably be expected, exactly what kinds of
information was withheld.  (See Gregory Decl. ¶¶ 55-57.)  The
Court concludes that these Declarations are non-conclusory and
sufficiently specific to satisfy the Government's burden on its
summary judgment motion.

     In opposition, Plaintiffs set forth three unavailing
arguments.  First, Plaintiffs challenge the sufficiency of the
Government's Declarations.  As with all other exemptions, the
Court rejects this argument for the same reasons stated above.

     Second, Plaintiffs argue that the Government has waived its
right to withhold information under Exemption 7(D) because the
Government has already disclosed that the confidential source is
a person named Paul Aniboli.  Plaintiffs assert that "a page,
varyingly Bates stamped by Defendant as page 289 and page 417,

from Leboff's Activity Record" was produced twice to Plaintiffs,
and that on the second production the Government redacted
Aniboli's name and handwrote "FOIA (b)(7)(D)" next to the
redaction.  Thus, Plaintiffs conclude, the source is Paul
Aniboli; his identity is no longer confidential; and the
Government must be ordered to produce all information withheld
under Exemption 7(D).  Plaintiffs bolster this argument in their
reply brief: because other unredacted documents mention Aniboli,
the confidential source must in fact be Aniboli.  Plaintiffs'
waiver argument fails for two reasons.

As an initial matter, Plaintiffs have not established that
Aniboli is the confidential source.  They offer no evidence,
other than purported inconsistencies in certain of the
Government's Exemption 7(D) redactions, that Aniboli acted as a
confidential informant to the IRS.  Leboff's Declaration, which
Plaintiffs do not contest on any legal grounds, explains that
this redaction was erroneous.  (See Leboff Decl. ¶ 8.)
Plaintiff's arguments otherwise are based on mere conjecture and
so do not defeat the Government's motion.  See Bryant v.
Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Therefore,
Plaintiffs' argument must fail.

Even if the source were in fact Aniboli, however, the Court
of Appeals has previously held that "[u]nder Exemption 7(D), an
agency's ability to withhold information, if it so chooses,

derives from the grant of confidentiality to the source of the information.  The privilege belongs to the beneficiary of the promise of confidentiality and continues until he or she waives it."  United Techs. Corp. v. NLRB, 777 F.2d 90, 95-96 (2d Cir. 1985).  Here, Plaintiffs do not contend that the Government's confidential source has waived the privilege; rather, they argue incorrectly that the IRS has waived the privilege.  Because the IRS never owned the privilege, Plaintiffs' argument——that the Government has disclosed that Aniboli is the confidential source——fails as a matter of law.

Plaintiffs' third argument is premised on their theory that Aniboli is both the Government's confidential source and Plaintiffs' former attorney.  Reasoning that Aniboli disclosed client confidences in violation of Plaintiffs' attorney-client privilege and Aniboli's ethical duties as a lawyer, Plaintiffs lecture both the Government and the Court about the legal and ethical breaches that Aniboli and the Government have purportedly committed.  They conclude that the Government must disclose the withheld information under FOIA as a kind of equitable remedy for all of the purported misconduct.

This argument fails because it was premised on the success of Plaintiffs' waiver argument.  In any event, a FOIA requester's purpose for seeking information withheld under Exemption 7(D) is irrelevant in determining whether the

information was properly withheld.  See Germosen v. Cox, No. 98 Civ. 1294, 1999 WL 1021559, at *17 (S.D.N.Y. No. 9, 1999) ("A proper analysis of Exemption 7(D) ordinarily concerns the law enforcement nature of the activities of the agency and the circumstances of the communication with the confidential source, not the specific purposes or interests of the party seeking disclosure.").  Thus, Plaintiffs' argument fails on that basis as well.  Finally, the Court notes that here, as in Germosen, Plaintiffs have made it abundantly clear though their reasoning, rhetoric, and demonstrated litigiousness that they would use the withheld information to harass the confidential source. Exemption 7(D) is meant to protect confidential sources from just this kind of behavior, "namely, an aggrieved individual seeking information from a law enforcement agency that would lead to the discovery of the identity of an informant who offered information on a confidential basis in order to take action against that informant."  Ortiz v. United States Dep't of Health & Human Servs., 70 F.3d 729, 735 (2d Cir. 1995). Accordingly, the Government's motion with respect to information withheld or redacted under Exemption 7(D) is GRANTED, and Plaintiffs' motion is DENIED.

### 7.  Documents Withheld as Nonresponsive

Finally, the Government has withheld a small number of documents as nonresponsive.  (Gregory Decl. ¶ 62.)  The Government asserts that these documents did not relate to the Estate's FOIA requests and instead concern "an agency project . . . not involving any specific taxpayer."  (Gregory 2d Decl. ¶ 6.)  Although Plaintiffs assert that these documents should nevertheless be disclosed, Plaintiffs offer no legal reason why the Court should order disclosure.  Accordingly, the Government's motion with respect to these documents is GRANTED, and Plaintiffs' motion is DENIED.

IV.   CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment [dkt. no. 25] is GRANTED, and Plaintiffs' cross-motion for summary judgment [dkt. no. 34] is DENIED. Plaintiffs' counsel shall review ABA Model Rule of Professional Conduct 3.3 and Federal Rule of Civil Procedure 11(b) before making further representations of law to this Court.   The Clerk of Court shall mark this action CLOSED and all pending motions DENIED as moot.


SO ORDERED:

DATED:      New York, New York
            November $\underline{24}$, 2009


                              _____
                              LORETTA A. PRESKA, Chief U.S.D.J.

51